OPINION OF THE COURT
Chief Judge Cooke
When a party moves to compel discovery of medical records, in this case psychiatric records, a treating hospi *455 tal, physician or other institution who is custodian of the records may request a protective order on the ground that disclosure of all or part of the record may be seriously detrimental to the interests of the patient, to uninvolved third parties, or to an important program of the custodian of the records, notwithstanding a valid waiver of the physician-patient privilege. In the present case, the custodian hospital failed to establish any detriment to the patient, third parties or itself warranting issuance of a protective order. Thus, there was no basis for the exercise of the court’s discretion to grant a protective order. Full disclosure was properly ordered upon a finding that the records were material and relevant to the issues of the litigation and that plaintiff had waived the privilege of confidentiality.
In the summer of 1977, plaintiff was undergoing treatment at New Rochelle Hospital. During that stay she jumped from a hospital window in an alleged suicide attempt. About a year after leaving New Rochelle Hospital, plaintiff was voluntarily admitted to New York Hospital for alcohol detoxification and rehabilitation. She received psychiatric treatment there and was discharged, as improved, in September, 1978.
In July, 1979, plaintiff instituted the present malpractice action against New Rochelle Hospital and three physicians for injuries sustained when she jumped from the hospital window. Plaintiff alleged that defendants were negligent “in failing to take proper precautions with a suicidal patient; in failing to recognize and treat a psychiatric emergency; * * * [and in] failing to treat [an] underlying psychiatric condition.” She also claimed aggravation of prior conditions, including psychological problems.
In response to requests for discovery, plaintiff authorized the release of all her hospital and medical records, including those of New York Hospital, as specified in CPLR 3121 (subd [a]). Upon receiving defendants’ request and plaintiff’s authorization, however, New York Hospital refused to release the records directly to plaintiff or anyone other than a “qualified medical doctor.”
Two of the defendant doctors, relying on CPLR 3101, 3102 (subd [c]), 3121 (subd [a]), and section 33.13 of the *456 Mental Hygiene Law, moved against New York Hospital for an order compelling disclosure of the psychiatric records on the ground that plaintiff had put both her physical and mental conditions in issue and, therefore, they were entitled to the records to prepare their defense against the claim of aggravation of a pre-existing mental condition. Plaintiff joined in defendants’ request. In opposing the motion, New York Hospital argued that it had an interest in maintaining the confidentiality of the records which existed notwithstanding plaintiff’s waiver of the privilege. It requested Special Term to examine the records to determine which portions, if any, were material and relevant to the issues in plaintiff’s suit; to supervise any disclosure; and to restrict access to counsel only. The court appointed a referee, who prohibited any discovery because the records contained such extensive “confidential and sensitive material, totally irrelevant to the issues in this action,” that redaction of those portions would make the remaining portions “of no consequence.” Special Term confirmed the referee’s finding.
The Appellate Division disagreed and ordered the records disclosed in their entirety. The court reasoned that plaintiff had expressly waived her privilege and should bear the ultimate responsibility for embarrassment resulting from disclosure. The court also found that the records were clearly material and relevant to the issue of aggravation of plaintiff’s mental condition as well as being necessary for both prosecuting and defending the action. Under these circumstances, it was concluded that New York Hospital, a nonparty, should not be allowed to frustrate the parties’ attempt to gain access to the plaintiff’s records. The Appellate Division granted leave to appeal on a certified question. This court now affirms.
It is well settled that a party must provide duly executed and acknowledged written authorizations for the release of pertinent medical records under the liberal discovery provisions of the CPLR (see CPLR 3121, subd [a]) when that party has waived the physician-patient privilege[1] by affirmatively putting his or her physical or mental condition in *457 issue (Prink v Rockefeller Center, 48 NY2d 309; Koump v Smith, 25 NY2d 287). In most of the reported cases where the right to disclosure was granted, however, the controversy centered on whether the party had waived the physician-patient privilege (see CPLR 4504) by placing his or her physical or mental condition in issue or on whether the records sought to be discovered were “material and necessary in the prosecution or defense of an action” (CPLR 3101; see, e.g., Daniele v Long Is. Jewish-Hillside Med. Center, 74 AD2d 814; Brooks v Hausauer, 51 AD2d 660; Mancinelli v Texas Eastern Transmission Corp., 34 AD2d 535). Patients also have been granted access to their records that were held by an opposing party, for purposes of litigation concerning the medical treatment rendered by that party (see Matter of Warrington [State of New York], 303 NY 129; Matter of Weiss, 208 Misc 1010).
This appeal presents a novel issue: when a patient, who is a party to a malpractice action, has waived the privilege of confidentiality, may a nonparty custodian of the medical records sought to be disclosed apply for a protective order prohibiting unconditional disclosure of those records?
New York Hospital’s opposition to the defendants’ motion and its request that the court examine the records itself to determine which portions were material and relevant will be treated as requesting a protective order pursuant to CPLR 3103.[2] Such orders are discretionary and may be made at any time on the court’s own initiative or on the motion of any party or witness in order to deny, limit,. condition or regulate the use of any disclosure device (CPLR 3103). A protective order is designed to “prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts” *458 (CPLR 3103, subd [a]). In support of its position, New York Hospital argues that psychiatric records must be accorded greater confidentiality than other types of medical records because of the highly sensitive nature of mental illness and treatment. The hospital warns that direct and unsupervised disclosure of psychiatric records may cause harm to the patient. Upon being confronted with the intimate information he or she has revealed or with doctors’ diagnoses and prognoses, it is contended that the patient may suffer a relapse. Moreover, it is argued that the technical medical terminology and shorthand used in the record may cause confusion or misunderstanding. Further, the patient’s relationships with other persons (such as family and friends) may also be harmed by revealing and disseminating the information in the record concerning them. These factors, it is argued, imbue the psychiatric record with an inherent confidentiality. For this reason, the hospital urges that the custodian or a court should have the discretion to withhold such records requested in the course of discovery even if the patient has waived the privilege of confidentiality. Moreover, the hospital contends that if disclosure is ordered, it should be made with adequate protective measures to ensure that only relevant material will be disclosed.
Defendants do not dispute that psychiatric records are particularly confidential in nature or that the hospital has the right to object to full disclosure on this basis. Rather, they assert that unconditional disclosure of the records was proper in this case because all parties to this litigation wished to examine the requested records that the court below found to be relevant. Defendants add that the non-party hospital failed to prove that any of the alleged dangers existed as to plaintiff. Finally, defendants note that the Appellate Division did follow the hospital’s suggested procedural safeguards by examining the record in camera before ordering full disclosure.
In order to evaluate defendants’ motion to compel full discovery and the hospital’s request to limit the scope of disclosure, the merits of the hospital’s assertion of its right to object must be addressed. The nature of medical records of a patient’s treatment must be examined in order to *459 determine whether objections by a treating physician or hospital should be allowed to limit discovery when the patient has waived the privilege of confidentiality. Medical records will generally contain laboratory reports, nurses’ notes, consultations, and a wide range of speculation and observation that led to the diagnosis and prognosis, which “ ‘[i]f not properly explained * * * could be exceedingly disturbing to a patient already apprehensive’ ” (Gotkin v Miller, 379 F Supp 859, 866 [EDNY], affd 514 F2d 125 [2d Cir], citing Dept. of Health, Education and Welfare, Rep of Secretary’s Comm on Med Malpractice, at p 76; see Note, Patient Access to Medical Records in Washington, 57 Wash L Rev 697, 700 [need to protect patients from potentially disturbing material]). Medical records, particularly psychiatric records, will often contain intimate details of past acts, hopes, fantasies, shames, and doubts that were divulged during treatment (see Weiner, Discovering Mental Health Records in Divorce or Personal Injury Proceedings, 64 Chi Bar Rec 244, citing Guttmacher and Weilhofen, Psychiatry and the Law [1952], p 272). Clinical studies of patients’ reactions to reading their psychiatric records have cited the danger of misconceptions and misunderstandings about the material because of the technical medical terminology often employed in the records, and have suggested that knowledgeable staff should be available when a chart is read to provide explanations (Note, 57 Wash L Rev, op. cit., at p 700, citing Simonton, Neuffer, Stein & Furedy, The Open Medical Record: An Educational Tool, 15 J Psychiatric Nursing & Mental Health Services 25, and Stein, Furedy, Simonton & Neuffer, Patient Access to Medical Records on a Psychiatric Inpatient Unit, 136 Am J Psychiatry 327; see, also, Dubro, Your Medical Records. How Private are They?, 3 Cal Lawyer [No. 4], 33, 34).
It is obvious that the psychological response of a patient to reading his or her medical record is generally more critical in the context of mental illness than in treatments for physical ailments (see Note, 57 Wash L Rev, op. cit., at p 700). For example, misconceptions about the information in the record could lead a patient to treat the diagnosis as a “label” that might serve to reinforce the patient’s negative *460 behavior or lead to feelings of hopelessness, which would impair treatment {id., citing 15 J Psychiatric Nursing and Mental Health Services 25). The danger of “self-fulfilling diagnoses” may be particularly evident in cases where homicidal or suicidal tendencies have been diagnosed {id., at pp 700-701). In addition, the unfettered disclosure of sensitive and confidential information relating to third parties, such as the patient’s family and friends, that the patient has revealed during therapy, may irreparably harm the patient’s relationship with these persons (Gotkin v Miller, 379 F Supp 859, 866 [EDNY], affd 514 F2d 125 [2d Cir], supra. Weiner, Discovering Mental Health Records in Divorce or Personal Injury Proceedings, 64 Chi Bar Rec 244, 246, citing 111 Rev Stat, ch 91x/2, par 810 [a] [1]).
Because of this potential of harm to a patient, medical records, particularly those of psychiatric treatment, should not be automatically and necessarily disclosed upon a patient’s waiver of the privilege of confidentiality under CPLR 4504.[3] The treating doctor or hospital possessing such records should have the right to assert, by means of a motion for a protective order, reasons for preserving the confidentiality of all or portions of such records, notwithstanding a patient’s waiver, in order to protect a patient, third party, or the doctor, or hospital, from potential injury. Confronting the policy of preventing such harm, however, is the competing policy of liberal discovery, which must be considered by a court in deciding whether to exercise its discretion and issue an order compelling discovery under CPLR 3120 (subd [b]) or CPLR 3124, when, as in this instance, the records are sought for purposes of litigation.
*461 The Legislature has indicated that parties to litigation are entitled to “full disclosure of all evidence material and necessary in the prosecution or defense of an action * * * by: (1) a party, or * * * a person authorized to practice medicine who has provided medical care or diagnosis to the party demanding disclosure” (CPLR 3101, subd [a], pars [1], [3]). The discovery provisions of the CPLR have traditionally been liberally construed to require disclosure “of any facts bearing on the controversy which will assist [parties’] preparation for trial” (see Allen v Crowell-Collier Pub. Co., 21 NY2d 403, 406). “The test is one of usefulness and reason” (id.). When a party’s mental or physical condition has been put in issue, the need for discovery of medical records in actions is usually clear (Prink v Rockefeller Center, 48 NY2d 309, supra; Koump v Smith, 25 NY2d 287, supra).
Thus, there exists here a situation where the need for discovery must be reconciled with the need to protect a patient from the potentially detrimental effects of disclosing her psychiatric records. In exercising its discretion regarding whether and to what degree a protective order under CPLR 3103 should issue, a court must strike a balance by weighing these conflicting interests in light of the facts of the particular case before it (cf. Gilbert-Frank Corp. v Guardsman Life Ins. Co., 78 AD2d 798 [need for discovery must be weighed against burden and expense imposed on defendant by disclosure]). This is a judicial function, but the resolution of the motions may be submitted to a referee pursuant to CPLR 3104. In order to balance the competing claims, an in camera inspection of the record will be advisable in most instances.
Inasmuch as no claim is advanced here of possible injury to third persons or to any programmatic or other pertinent interest of the hospital, we address only considerations of detriment to the patient. The balancing process begins by a court broadly determining whether the records are discoverable under CPLR article 31. If the records are found generally to be material under CPLR 3101 and the patient is found to have waived the privilege of confidentiality, either expressly by authorizing the record’s release or implicitly by placing his or her mental condition in issue, a *462 strong presumption is created in favor of granting the motion to compel disclosure. This presumption may be rebutted, however, by a custodian hospital or physician in a request for a protective order limiting discovery upon a showing of exceptional circumstances. Such circumstances may be deemed present when the custodian establishes that nondisclosure, in whole or in part, is reasonably necessary to prevent imminent and serious physical or psychological damage to the patient. Failure to rebut the presumption requires the court to order disclosure of the entire record to all parties.[4]
Should the custodian , meet this burden, the court must then weigh the objectionable information’s importance to the pending litigation against the harm that is claimed will occur by its disclosure. Among other things, factors such as the imminence and seriousness of the claimed harm, the materiality of the information to the litigation, and the potential conflicts of interest which the custodian may have in objecting to disclosure, should be considered in the exercise of a court’s discretion. After weighing all the circumstances, the court may then decide whether a protective order should be granted and, if so, whether it should extend to all or only a portion of the records. Whenever the custodian hospital or doctor has established potential harm to the patient but the need for disclosure is deemed paramount, the risk of harm to the patient should be minimized, if possible, by redacting the objectionable parts of the potentially harmful portions of the record (cf. Calcados Samello, S.A. v Intershoe Inc., 78 AD2d 796 [irrelevant portions of business records sought to be disclosed could be excised after in camera inspection]).[5]
In the case at bar, the Appellate Division properly considered the objection to disclosure and request by the hospital to limit discovery to the relevant portions of the *463 record. The court conducted an in camera examination of the psychiatric records in order to evaluate the hospital’s objection. It determined that the records were clearly material and relevant to the litigation and necessary to the parties. Plaintiff was found to have waived the physician-patient privilege. Therefore, a presumption of full disclosure existed under the discovery provisions of the CPLR. New York Hospital submitted no evidence that disclosure of all portions of the record would result in imminent, serious physical or psychological harm to the plaintiff. On the record here, the hospital failed to establish that full disclosure should be curtailed to “prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person” (CPLR 3103, subd [a]). Thus, no need for a protective order was established and it was a proper exercise of the court’s discretion to order full disclosure of the records.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question should be answered in the affirmative.

. References to the physician-patient privilege herein include the privilege of both a current patient and a former patient.

. When a notice for discovery is served pursuant to CPLR 3120 (discovery and production of documents) or CPLR 3121 (physical or mental examination), “a party may serve a notice of motion for a protective order, specifying his objections” within 10 days of service of the notice for discovery (see CPLR 3122). The hospital argued that it was not barred from objecting for failure to move within 10 days under CPLR 3122 because in the present case the proper vehicle for discovery of the plaintiff’s records would have been to procure a court order, pursuant to CPLR 3120 (subd [b]), which regulates discovery and inspection of documents as against a nonparty. New York Hospital was never served with an order for such discovery nor did the defendants move for an order under CPLR 3120 (subd [b]). In addition, defendants did not move to compel disclosure under CPLR 3124. Thus, the 10-day limitation on moving for a protective order under CPLR 3122 never began to run and so New York Hospital is not barred from seeking such relief (cf. CPLR 3103 [general motion for a protective order may be made at any time]).

. It should be noted that, in New York, although patients may exercise a considerable degree of control over their records, there is no statute that expressly allows them to obtain direct and complete access to their medical records regardless of whether litigation is pending (cf. Public Health Law, § 17; Mental Hygiene Law, § 33.13; CPLR 3101, 4504). This court has not had occasion to decide whether there is an absolute common-law right to unconditional disclosure of a patient’s medical or psychiatric records. Nor have other courts found such a right (see Matter of Gerkin v Werner, 106 Misc 2d 643 [patient has property right which affords reasonable access to medical records]; People v Cohen, 98 Misc 2d 874, 877 [dentist held records only as custodian for patient, not personal property]; Matter of Striegel v Tofano, 92 Misc 2d 113, 116 [doctor has primary custodial right to records but patient has right of reasonable access]; Matter of Culbertson, 57 Misc 2d 391, 393-395 [records were property of doctor]; see, also, Gotkin v Miller, 379 P Supp 859, 867 [EDNY], affd 514 F2d 125 [2d Cir] [patient has no common-law right to compel release of psychiatric records]).

. Of course, the patient would also be free to move for a protective order under CPLR 3103 in order to prevent disclosure of intimate details contained in the record which are irrelevant to the issues.

. No new category of documents is created by this writing for the purposes of discovery. Rather, the process advanced is within the CPLR frame for discovery and protective orders. It provides practical guidance to the courts to meet the unique situation in which a custodian of medical or psychiatric records refuses to produce them, notwithstanding the waiver of confidentiality by a patient-party, who would otherwise be entitled to the records under CPLR discovery provisions.