Bellacosa, J.
(concurring). Although I concur in the court’s decision to reverse, I write separately to express my different perspective on the rationale of the majority opinion.
The material sought to be discovered by the plaintiff in this case consists of unpublished photographs taken by a photojournalist employed by a Rochester newspaper. Neither the newspaper nor the photojournalist are parties to the automobile accident case seeking damages for negligence, but plaintiff argues that the photos are discoverable because they are "material and necessary” to his case.
As is evident from the language of CPLR 3101, civil discovery is meant to be generous and sweeping. Subdivision (a) sets the tone by announcing: "There shall be full disclosure of all evidence material and necessary in the prosecution or defense of an action”, with subdivisions (b), (c) and (d) serving as limitations on the general availability (see, Siegel, NY Prac § 344, at 420-423). In this framework, exceptions to the demand for all relevant evidence should " 'not [be] lightly created nor expansively construed, for they are in derogation of the search for truth’ ” in the adjudication of disputes within the judicial system (Herbert v Lando, 441 US 153, 175, quoting United States v Nixon, 418 US 683, 710; see also, Cynthia B. v New Rochelle Hosp. Med. Center, 60 NY2d 452, 460-462).
The court is confronted in this case with two competing interests: the interest in maintaining the free flow of information by the organized press and the evidentiary needs of an injured litigant.
Clearly, the special sanctuary sought by the publisher Gannett Rochester Newspapers cannot be justified solely on the basis of its photojournalist’s role as a private citizen or as an employee, because that would contradict the general susceptibility of all citizens and entities to broadly available judicial process. The only rationale for cloaking the press with this exceptional protection rests on the unique role of reporters as purveyors of information to the public and of newspapers as forums for criticism, discussion and debate.
That rationale tips the balance in favor of a constitutional qualified privilege for the press in this case, because without the extra gloss of protection against ordinary disclosure the *533 unique functions of the press could be seriously interdicted. The nature of the press function makes it a more likely target for subpoenas which, in turn, will generate cost and diversion in time and attention from journalistic pursuits. Indeed, the real threat that unpublished photos may eventually be "material and relevant” in some litigation between private parties may induce reporters to discard, in the ordinary course, potentially discoverable materials to avoid exposure to judicial process by subpoena duces tecum. Journalists should be spending their time in newsrooms, not in courtrooms as participants in the litigation process (Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 168 [dissenting opn]).
This case will for all practical purposes eclipse the purpose of the Shield Law (Civil Rights Law § 79-h) except in the narrowest circumstance — the small residuum between the constitutional qualified privileged confidential materials and the absolutely confidential kind. Thus, the state of the law left in the wake of the cramped statutory construction in Matter of Knight-Ridder Broadcasting v Greenberg (70 NY2d 151, supra) adds a special impetus for the court to declare a State constitutionally protected qualified privilege as to nonconfidential photographic materials to complement the statutorily shielded confidential materials. Otherwise, photographs like these, acquired in a "nonconfidential” manner, would remain amenable to normal demands and distractions already evident in the often-abused discovery process of civil litigation.
As I understand the new test, the State constitutionally based qualified privilege simply elevates the CPLR 3101 thresholds from "material” to "highly” so, from "necessary” to "critical”, and from "insufficiently independent availability” to "not otherwise available”; and, it inverts the burden or imposes a presumption in favor of the protected press over the ordinary litigant.
I unhesitatingly join in the reversal because this decision substantially fills the policy gap created by the holding in Matter of Knight-Ridder Broadcasting v Greenberg (70 NY2d 151, supra), and does so on a higher order of law — the State Constitution. Nevertheless, while I am satisfied that a distinction can and has been made justifying invocation of a State constitutional right to create a qualified privilege to the press, an incongruity may be inferred from this holding because the court refused to do that very thing in favor of a pamphleteer in a private shopping mall, based on the free speech right *534 (SHAD Alliance v Smith Haven Mall, 66 NY2d 496, 508 [Wachtler, Ch. J., dissenting]).
Chief Judge Wachtler and Judges Simons, Kaye and Alexander concur with Judge Hancock, Jr.; Judge Kaye concurs in a separate concurring opinion; Judge Bellacosa concurs in result in another concurring opinion; Judge Titone taking no part.
Order of Supreme Court appealed from and order of the Appellate Division brought up for review reversed, with costs, and matter remitted to Supreme Court, Monroe County, for further proceedings in accordance with the opinion herein.