(July 29, 1999)

■ In the Matter of WORLD TRADE CENTER BOMBING LITIGATION. STEERING COMMITTEE (Representing Plaintiffs), Respondent-Appellant, v PORT AUTHORITY OF NEW YORK AND

NEW JERSEY, Appellant-Respondent. [693 NYS2d 586] —Order, Supreme Court, New York County (Stanley Sklar, J.), entered May 13, 1997, which adopted with some revisions the revised report of the Special Master and required defendant The Port Authority of New York and New Jersey (Port Authority) to produce certain documents and portions of documents and protected other documents and portions thereof from disclosure, and orders, same court (Nicholas Doyle, Spec. Ref.), entered June 13, 1997 and July 17, 1997, which purported to modify the above-described order, unanimously affirmed, without costs.

This matter is before us on remand from the Court of Appeals (93 NY2d 1), which determined that defendant Port Authority was not precluded from invoking the public interest privilege in its capacity as owner and landlord of the World Trade Center and reversed an order of this Court (248 AD2d 137), which had held the privilege inapplicable to Port Authority acting in that capacity and had therefore vacated an order of protection shielding from discovery certain security-related materials pursuant to the privilege.

The relevant facts are set forth in the opinion of the Court of Appeals.

As to the documents and portions of documents that were shielded from disclosure by Supreme Court based on the public interest privilege pursuant to its finding that they would be helpful to persons intending to injure persons or property at the World Trade Center and on the ground that the materials had been supplied by various governmental law enforcement agencies on the condition that the information would be kept confidential, plaintiff Steering Committee does not now set forth any arguments in support of disclosure. Plaintiff Linda P. Nash, who has filed a separate brief, differs from that position only in that she contends that disclosure should also be ordered as to any documents that were protected from disclosure by Supreme Court insofar as the information they contain is already in the public domain on the ground that the public interest privilege therefore does not apply. Plaintiffs also do not seek to overturn Supreme Court's decision that, assuming the application of the public interest privilege in the first instance, a hearing will be necessary to determine whether Port Authority nevertheless waived the privilege by revealing the documents that are subject to the privilege, without objection, to other parties, including the New York State Senate Committee on Investigations, Taxation and Government Operations.

As to the documents and portions of documents that were

held by Supreme Court over Port Authority's objection not to be subject to the privilege and were ordered disclosed, Port Authority argues that they should be protected in their entirety and plaintiffs argue that they should be disclosed in their entirety. These documents include excerpts from a report prepared by the Port Authority Office for Special Planning entitled "Counter Terrorism Perspectives: The World Trade Center", excerpts from additional reports prepared by outside security consultants for Port Authority and copies of or excerpts from other related documents. Additional documents, or portions thereof, were also held to be discoverable, but that ruling was conditioned on relevance, depending on whether plaintiffs asserted claims related to issues discussed therein.

The Supreme Court's ruling was based, with certain revisions, on the exhaustive and detailed line by line analysis of all of the documents by Special Master Martin Stecher, who, *inter alia*, analyzed the documents to determine whether they were privileged under the public interest privilege because they contained security-sensitive information or because they were irrelevant.[1] Since the Special Master did not reach the argument raised by Port Authority that certain documents should be protected from disclosure pursuant to the public interest privilege on the separate ground that their disclosure would cause the candor of employees and consultants to be impaired in performing their duty to prepare similar materials in the future, the Supreme Court evaluated the documents on that basis and found that two additional document excerpts should be withheld from disclosure on that ground. The court also ruled that the question of whether the privilege had been waived by Port Authority would necessitate a hearing but that any such hearing should await a ruling on whether the documents were protected by the privilege in the first instance. The claim of waiver was based primarily on Port Authority's having disclosed, without objection, the information contained in a number of the documents to a Senate committee conducting hearings on the bombing and not objecting when some of the documents were read into the public record at that hearing.

As noted *supra*, the Court of Appeals held that Port Authority was entitled to assert the public interest privilege. It also approved of the three grounds under which Port Authority has sought to protect documents from disclosure pursuant to the privilege, i.e., "(1) the documents, or some of their parts, contain confidential information concerning safety or security

---

1. The Special Master also delineated documents and excerpts as to which Port Authority had not articulated a specific objection.

systems, methods, devices, practices or vulnerabilities, the disclosure of which would endanger lives and property and adversely affect security at the WTC; (2) the disclosure would inhibit candor among persons engaged in efforts undertaken by government agencies to promote public safety; and (3) the disclosure would reveal confidential information regarding criminal activity obtained from law enforcement agencies under a pledge of confidentiality" (*Matter of World Trade Ctr. Bombing Litig., supra,* at 10). It held that it was therefore incumbent upon the courts to weigh the interests of the parties to determine whether the privilege would apply to each document (*supra,* at 8-9, citing *Cirale v 80 Pine St. Corp.,* 35 NY2d 113). In discussing the role of a court in determining whether certain documents are protected from disclosure, while the Court noted that " '[o]nce it is shown that disclosure would be more harmful to the interests of the government than [nondisclosure would be to] the interests of the party seeking the information, the overall public interest on balance would then be better served by nondisclosure' " (*supra,* at 8-9, quoting *Cirale v 80 Pine St. Corp., supra,* at 118), it also stated that a court that is performing this balancing test must keep in mind that the interests of a "private litigant in a civil case," even if those interests are valid, are being weighed against the obligation of the public entity to protect the public good (*supra,* at 9).

The competing interests in this matter are the Port Authority's interest in maintaining public safety at the World Trade Center and the plaintiffs' interest in advancing their claims that Port Authority either negligently or recklessly ignored a stated potential risk and/or misrepresented the quality and nature of security at the World Trade Center to prospective tenants.

Plaintiffs, moreover, argue that the advancement of their goal of exposing this alleged misfeasance on the Port Authority's part is not only beneficial to them as individuals in their attempt to recover damages for the injuries suffered as a result of Port Authority's alleged behavior but actually does more to serve the public safety than the Port Authority's goal of maintaining the confidentiality of its security policies. Their primary assertion, as to which they claim these documents are necessary, is that the Port Authority was for years prior to the bombing repeatedly advised that allowing public parking beneath the World Trade Center created a substantial risk of the type of terrorist act which actually occurred, but that it chose negligently or recklessly to ignore those warnings in breach of its duty of care to the public and its tenants. Along

with the numerous plaintiffs asserting personal injury and related claims against the Port Authority, the World Trade Center's commercial tenants claimed that the Authority induced them to lease space in the World Trade Center by making the allegedly false representation that the World Trade Center had state-of-the-art security.

Port Authority argues that the public interest privilege protects these documents either because their disclosure would be useful to persons seeking to cause injury to persons and property at the World Trade Center and/or because their disclosure would inhibit candor in security analysis in the future.[2]

As to the first rationale, which is set forth in regard to the court's rulings identified by Port Authority in its original brief to this Court as 14, 21-23, 44, 53-54, 57 and 72-76, we find that Port Authority has not made a case for its contention that the materials revealed contain security sensitive information that would be useful to persons bent on destruction.

It is essential to point out that one of the factors crucial to the finding of the Special Master, the Supreme Court, and to this Court in determining whether the information contained in a number of these documents would be valuable to such persons is the fact that much of it has already been widely disseminated and is available to the public. In this context, it is important to keep in mind that much of the disclosure ordered by Supreme Court merely reveals the Port Authority's prior analysis of vulnerabilities in its security system that have already been exploited by terrorists, in the very bombing at issue here, have already been made well known to the public, and have, indeed, been the subject of public proceedings and extensive media coverage. Clearly, there is no risk to the public in revealing the fact that the World Trade Center was vulnerable to a car bomb placed in its underground garage. That fact is now, unfortunately, obvious to all.

Port Authority, however, nevertheless contends that there are still certain public safety risks involved in the release of some of the documents released by the Supreme Court.

As to the rulings numbered by Port Authority as 21-23 and 53-54, which refer to the table of contents and sections C.3.2 and C.3.3 of appendix C of document D-2, we find that the

---

**2.** None of the documents currently at issue are argued to be privileged under the third rationale, i.e., that their disclosure would involve the release of information obtained from law enforcement agencies under a pledge of confidentiality.

Supreme Court properly relied upon the finding of the Special Master that the information contained therein was already "widely known" and that its disclosure does not threaten public safety.

As to rulings numbered by Port Authority as 14 and 44, which involved excerpts of table 1.1 of document D-2 and table 1.1 of document 8, the Supreme Court properly confirmed the finding of the Special Master that the very limited disclosure of information that was contained in documents otherwise protected from disclosure involved matters that were already known to the public by virtue of the bombing itself and, unlike the other information contained in these documents which was protected from disclosure, did not involve sensitive "security information." We note that Port Authority's attempt to distinguish the information revealed by these rulings from information already known to the public is unavailing.

As to the ruling numbered by Port Authority as 57, which permitted disclosure of an excerpt from a chart contained in document 13, the court properly confirmed the finding that the information was known to the public by virtue of the bombing. As to the rulings numbered by Port Authority as 73-76, which permitted provisional disclosure, depending on the factual nature of the claims ultimately set forth by plaintiffs, of documents 26, 27, 30 and 31, the Special Master, as confirmed by the Supreme Court, did not rule on whether their disclosure raised safety concerns requiring protection but may be presumed, by its silence, to have ruled that it does not. In any case, upon review of these documents, we find that they do not raise such concerns.

As to ruling 72, involving document 25, we find that the memorandum that was provisionally disclosed, depending upon whether it was relevant to the type of injuries claimed to have been suffered by plaintiffs, contains no sensitive security information.

Finally, as to the argument set forth by plaintiff Linda Nash, we find that analysis of the documents that were protected from disclosure on this ground, as performed by the Special Master and Supreme Court, appropriately took into consideration the impact of public dissemination of certain information in evaluating its usefulness to potential malefactors.

The second rationale set forth by Port Authority is that disclosure of certain types of documents would inhibit candor in the preparation of future security analyses of public facilities, which, it contends, requires protection from disclosure of all the documents at issue, consisting of building security plans,

security audits, and other security-related documents. Port Authority argues that the potential for future disclosure of such information could subconsciously motivate those who prepare such reports to avoid making them "detailed, unrestrained, and full," and also argues that, even if portions of the documents exist that do not contain this type of information, the entire document should be protected from disclosure since "[a]n author of a security analysis in an environment in which the dissection of the document could be anticipated would always have doubts as to whether an *ex post facto* examination of the document to determine which passages will be protected from disclosure would result in an analysis consistent with that of the author."

As an initial matter, we reject Port Authority's contention that Supreme Court failed to consider its candor argument and that the matter should be remanded for such consideration. While the Special Master did not reach this argument, the Supreme Court specifically stated that it had "itself reviewed, *in camera*, those documents as to which the Port Authority claims privilege on the ground of candor" and then went on to rule specifically as to those objections. While it rejected the argument as to all but two excerpts from separate documents, there is no basis for Port Authority's claim that it did not properly consider it.

The Court of Appeals specifically noted that it considered this argument to represent an important interest that must be carefully protected by the courts in determining whether documents should be disclosed. Thus, it stated that the argument that "the disclosure would inhibit candor among persons engaged in efforts undertaken by government agencies to promote public safety" was among those that it considered "vital and, arguably, unassailable." (*Supra,* at 10.) Seen simply in this light, it is difficult to imagine any private interest set forth by plaintiffs that could overcome a legitimate showing on Port Authority's part that disclosure of these documents would inhibit candor among such persons.

However, the Court of Appeals also noted that the balancing of interests required by *Cirale* "can include the weighing of ' "the encouragement of candor in the development of policy against the degree to which the public interest may be served by disclosing information which elucidates the governmental action taken" ' " (*Matter of World Trade Ctr. Bombing Litig., supra,* at 9, quoting *Martin A. v Gross,* 194 AD2d 195, 203, quoting *One Beekman Place v City of New York,* 169 AD2d 492, 493). Thus, the disclosure sought by plaintiffs may serve not

only their own interests, but that of the public as well. In this context, it is obviously quite possible that plaintiffs would be able to set forth arguments that disclosure to them, while sought on their own behalf, in actuality serves the public interest more effectively than protection.

Upon balancing the interest of the public in protection of the documents as opposed to the interest of the public in disclosure, we find that the Supreme Court properly ordered disclosure as to these documents.

Initially, we note that Supreme Court's ruling that the last sentence of page 82 of document D-1 and the fourth sentence and three subitems on page 70 of document D-4 should be protected from disclosure on these grounds was correct.

As to the remaining documents, like Supreme Court, we are not persuaded that the candor of security experts in performing their duty to analyze and report on security systems, including any defects therein, would be diminished by the prospect that their reports would one day be discoverable in a civil action (*see, Dowling v American Hawaii Cruises,* 971 F2d 423). Indeed, as plaintiffs point out, the prospect that the analysis and opinions offered by such consultants could eventually be made public would be more likely to improve the quality of their work than to impair it. To assume that these experts would hide their true evaluation of a faulty security system in order to protect their clients from potential liability should they fail to carry out their recommendations is counterintuitive. Surely even their own interest in protecting themselves from such liability would instead encourage such experts to be as thorough and frank as possible.

We note that this is a significantly different situation than that presented in *Martin A. v Gross* (194 AD2d 195, *supra*), heavily relied upon by Port Authority, in which this Court held that the public interest privilege was available to shield an internal report of the New York City Human Resources Administration's Child Fatality Review Panel concerning the death of a child, in which the Administration was analyzing, as well as criticizing, its own behavior and policies in a matter which had already concluded, as well as analyzing changes in policy. It is apparent that a person preparing such a report might hesitate to reveal the truth if in doing so it meant revealing to the world the agency's prior misfeasance. The matter at hand presents a far different situation. The security analyses at issue here were performed before any potential liability had arisen. Their goal was not to analyze prior mistakes but to recommend future action. In that situation, the motive to hide the

truth that was feared as a side effect of disclosure in *Martin A.* disappears.

This matter is similarly distinguishable from *One Beekman Place v City of New York* (169 AD2d 492, *supra*), which involved a request for reports prepared by the staff of the Department of City Planning in connection with a proposed rezoning. There, this Court not only found that the plaintiffs had been provided with voluminous discovery on factual issues and thus had not shown a strong need for the documents at issue, but the documents involved discussions preparatory to governmental policy decisions, not, as here, analyses of and recommendations for improving security and building management.

While, for these reasons, Port Authority has shown little, if any, compelling rationale supporting nondisclosure on either public safety or on candor grounds, plaintiffs have demonstrated a number of strong reasons to permit them access to this very limited subset of documents. Not only have plaintiffs persuasively argued, as noted above, that the potential of future disclosure of such documents would most likely motivate improved, rather than impaired, performance in their preparation, plaintiffs have also shown that these documents are crucial to the prosecution of their claim, which is directly related to Port Authority's alleged prior awareness of deficiencies in its security system and its alleged failure to address them. While, at this juncture, we take no position on the likelihood of success of this argument, it nevertheless appears clear that, were we to protect such documents with the idea that this would promote candor in similar situations in the future, and therefore possibly permit Port Authority to limit its potential for liability in this matter, we would also be limiting the incentive provided by the specter of such liability to maintain appropriate security.

Finally, we note that the Court of Appeals deliberately declined to review Port Authority's argument that certain documents released by the IAS Court, even if otherwise subject to disclosure, should be protected on the ground that they were irrelevant. These are the documents referred to in what Port Authority has identified as rulings 52 (excerpt from D-10), 56 (excerpt from D-13), 57 (excerpt from D-13) and 86 (excerpt D-49). All of these refer to areas above the subgrade areas of the World Trade Center, which is the basis of Port Authority's argument that they are irrelevant to plaintiffs' claims. Port Authority has presented no reason to alter our prior holding that these documents are relevant under CPLR 3101 (a). As to any documents ruled nondisclosable by Supreme Court on

relevance grounds, or conditionally disclosable depending on the factual nature of the claims asserted by the individual plaintiffs, the Supreme Court's order should be affirmed. Concur—Ellerin, P. J., Mazzarelli, Wallach and Andrias, JJ.