[747 NYS2d 433]

In the Matter of WORLD TRADE CENTER BOMBING LITIGATION.

LINDA P. NASH, Respondent, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Appellant.

LINDA P. NASH, Appellant, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Respondent.

First Department, September 5, 2002

## APPEARANCES OF COUNSEL

*Louis A. Mangone* for respondent/appellant.

*Anne M. Tannenbaum* of counsel (*Carlene V. McIntyre* and *Gerald S. Crowley* on the brief; *Milton H. Pachter*, attorney), for appellant/respondent.

## OPINION OF THE COURT

NARDELLI, J.P.

In this appeal, we are asked to resolve certain discovery disputes pertaining to whether defendant should be permitted to depose plaintiff a second time and whether certain documents produced by defendant should retain "Confidential Information" designations.

Defendant The Port Authority of New York and New Jersey (the PA) was created in 1921 as a bistate public authority by an interstate compact between the States of New York and New Jersey (L 1921, ch 154; LNJ 1921, ch 151), which was approved by the Congress of the United States by joint resolution of August 23, 1921 (42 US Stat 174 [ch 77]). The purpose of the PA was to promote cooperation between New York and New Jersey in the development of public transportation, terminals and other facilities of commerce within the legislatively defined Port District (*see, Faillace v Port Auth. of N.Y. & N.J.*, 130 AD2d 34, *lv denied* 70 NY2d 613). The PA currently owns, operates or oversees a number of major facilities including airports, heliports, interstate bridges and tunnels, marine terminals and, until its destruction on September 11, 2001 by mass murderers, the World Trade Center (the WTC).

The WTC consisted of a multibuilding office complex on a 16-acre site on the lower end of Manhattan Island. It included "all buildings, structures, improvements and areas constituting a facility of commerce notwithstanding that portions of them 'may not be devoted to purposes of the port development project other than the production of incidental revenue available for the expenses of all or part of the port development project' "

(*Matter of World Trade Ctr. Bombing Litig.*, 93 NY2d 1, 5, quoting McKinney's Uncons Laws of NY § 6602 [L 1962, ch 209, § 2, as amended]). The WTC was "in all respects for the benefit of the people of the states of New York and New Jersey, for the increase of their commerce and prosperity and for the improvement of their health and living conditions * * *" (McKinney's Uncons Laws of NY § 6610 [L 1962, ch 209, § 10]).

Plaintiff Linda P. Nash was employed as a senior manager in DeLoitte & Touche's Actuarial, Benefits & Compensation Consulting Group, which had offices in the WTC complex. On February 26, 1993, Ms. Nash was returning to her office from a meeting with a client, and was in the process of parking her car in the public parking garage under the WTC when a bomb was detonated at the B-2 level of the garage. The explosion caused the deaths of six people and injuries to many others, including plaintiff, who was one of 21 people in the garage at the time of detonation.

Plaintiff, as the result of the explosion, was hit in the head by concrete and thrown to the floor, unconscious. She was discovered approximately one hour later by firefighters from Rescue Five, who were in the course of searching for a missing firefighter when they stumbled upon Ms. Nash in a dazed, semicoherent condition. Captain Edward Staines of Rescue Five, in deposition testimony, commented that the smoke was "very thick, amazingly thick" and that he "was never more scared in 34 years, so that is how bad it was." Ms. Nash allegedly suffered serious, permanent brain injuries, cognitive and functional impairments, post-traumatic stress disorder, as well as physical and neuro-fatigue, which has left her with drastically diminished physical and mental stamina. Plaintiff, who was subsequently terminated by DeLoitte & Touche, contends that she cannot work at any job, even as a volunteer, that involves any level of emotional distress or executive skills, and that even the simplest social activities, such as church functions and family visits, sap her strength in a very short time, rendering her unable to enjoy, or sustain, those activities.

Shortly after the explosion, a grand jury in the Southern District of New York began investigating the bombing and in September 1993, the grand jury issued indictments against Ahmad Mohammad Ajaj, Ramzi Ahmed Yousef, and several others on various charges relating to their participation in the bombing of the WTC, including a charge of conspiracy to damage and destroy a building in violation of 18 USC § 844 (i) (*see, United States v Suleiman*, 208 F3d 32, 34-35). Approximately

one year after the bombing, four individuals were convicted of engaging in a conspiracy which resulted in the placement and detonation of the bomb.

Plaintiff, in her personal injury action, is not represented by the Steering Committee, which was created in 1994 pursuant to a judicial consolidation order that joins over 175 cases for trial, as she has "opted out." We note that discovery issues in this matter have been before this Court twice before. Defendant had previously opposed efforts to obtain WTC building security plans and other documents on the grounds of public safety concerns, asserting the public interest exception to New York's liberal discovery rules. This Court ruled in plaintiff's favor and held that the PA's role as owner of the WTC was indistinguishable from that of any other private landlord, and rejected the public interest privilege as a matter of law.

The Court of Appeals reversed (*Matter of World Trade Ctr. Bombing Litig.*, 248 AD2d 137, *revd* 93 NY2d 1), and held that defendant was not required, as a matter of law, to disclose the WTC security-related materials at issue. Rather, the Court of Appeals stated that the issue of whether the documents are shielded by a public interest privilege should be determined by in camera assessment. The Court noted, however, that the documents before it, which related to the vulnerability and security of the WTC, bore all the indicia of being subject to the public interest privilege.

The Court of Appeals then remitted the matter to this Court for an inquiry as to whether defendant could show that the public interest might be harmed if the materials sought were to lose their shield of confidentiality, such that, on balance, disclosure would produce results more harmful to the public good than beneficial to the litigants seeking the materials. The Court of Appeals characterized the PA's reasons for how the public interest might be harmed by disclosures as "vital and, arguably, unassailable in view of the stark specter of worldwide terrorism and domestic efforts to deal with these growing threats to highly visible public targets * * *"* (*id.* at 10).

This Court, upon remittal, reviewed the Supreme Court's ruling based on Special Master Martin Stecher's "exhaustive

---

* Other attacks against United States interests include: the bombing of the United States Marines barracks in Beirut, Lebanon on October 23, 1983; the WTC bombing on February 26, 1993; the bombing of the Alfred P. Murrah Federal Building in Oklahoma City on April 19, 1995; the bombing of United States military headquarters in Riyadh, Saudi Arabia on November 13, 1995; the bombing of Khubar Towers in Dhahran, Saudi Arabia on June 25, 1996; the bombing of American embassies in Nairobi, Kenya and Dar es

and detailed line by line analysis" as to the public interest privilege after an in camera assessment, as well as the Supreme Court's separate analysis as to whether disclosure would inhibit employee candor. This Court upheld the disclosure rulings, both as to findings of confidentiality and as to those documents that were ordered disclosed (*Matter of World Trade Ctr. Bombing Litig.*, 263 AD2d 417, *appeal dismissed* 94 NY2d 858).

In August 1997, the parties, including Ms. Nash, entered into a document entitled "Confidentiality Stipulation and Order," and subsequently entered into a second "Confidentiality Stipulation and Order," dated December 15, 1998, which was "So Ordered" and entered on January 4, 1999 (the Stipulation). The later Stipulation specifically provides that it "supercedes and replaces" the earlier version.

Paragraph 2 of the Stipulation states that:

"In addition to all documents provided by the Port Authority as directed by, and in compliance with any final decision as to certain *security documents that are the subject of an appeal to the Court of Appeals * * * which are hereby deemed 'Confidential Information,'* the Port Authority, or a Non-Party * * * producing the Port Authority's confidential information * * * may designate documents or other information as 'Confidential Information' * * *" (emphasis added).

Paragraph 6 of the Stipulation provides, in relevant part, that:

"*In addition to the documents deemed 'Confidential Information'* referred to in paragraph 2 above, the Port Authority or any Non-Party producing documents, materials or other information in connection with the WORLD TRADE CENTER BOMBING LITIGATION may designate such items as 'CONFIDENTIAL INFORMATION—WORLD TRADE CENTER BOMBING LITIGATION' consistent with this order." (Emphasis added.)

Paragraph 11 of the Stipulation states:

"If the Plaintiffs' Steering Committee or the Opted-Out Law Firms *dispute a designation of documents*

---

Salaam, Tanzania on August 7, 1998; and the bombing of the USS Cole on October 12, 2000 in Yemen.

*or information as Confidential Information,* it shall notify the Port Authority's counsel and Non-Party, if applicable in writing of such dispute * * * In an effort to settle such a dispute without judicial intervention, the Parties and/or Non-Parties shall discuss whether the restrictions imposed in this Confidentiality Stipulation and Order are warranted with respect to said documents or information * * * If resolution of the matter cannot be reached within thirty (30) days after receipt of such notification, the Party contesting the designation may apply to the Court or Special Referee for final resolution within thirty (30) days thereafter for an appropriate determination. During the pendency of such application, and until the Court or Special Referee may rule otherwise, the materials designated as Confidential Information shall remain subject to this order." (Emphasis added.)

Plaintiff, by notice of motion dated November 16, 2000, moved, under paragraph 11 of the Stipulation, to remove the confidentiality designation from certain documents produced by defendant and the additional portion of a page of a previously produced document on the grounds that the documents were not subject to any privilege and did not contain confidential information. Plaintiff maintained that she had sought the removal of these particular confidentiality designations six weeks prior to making the motion, but that defendant had refused the request. The contents of the documents which are the subject of plaintiff's motion, however, are not described and copies are not annexed to her motion as it appears in the appellate record.

Defendant thereafter cross-moved for an order striking plaintiff's complaint, or, in the alternative, an order of preclusion concerning the issue of defendant's liability, unless plaintiff submits to a medical examination and a second deposition. The second deposition was sought on the ground that plaintiff, for the first time, and almost three years after her earlier deposition, designated herself as a liability witness.

The aforesaid motion and cross motion ultimately generated two written decisions by Special Referee Nicholas Doyle, both of which are the subjects of this appeal. In his first decision and order, entered January 4, 2001, Special Referee Doyle granted plaintiff's motion to the extent of directing defendant to make another motion, returnable within 30 days, address-

ing: whether any of the security documents whose "confidential" designation plaintiff wished to remove actually contain confidential matter; and whether it would be better, in light of the public interest, to redact confidential information rather than designate all of the security documents produced as confidential. The Special Referee denied defendant's cross motion to the extent it sought a further deposition of plaintiff, noting that plaintiff's 10 hours of deposition testimony had not been curtailed by improper objections, and that plaintiff had been questioned on her prior use of the WTC garage, thereby addressing the issue of notice liability.

Defendant thereafter moved to retain the confidentiality of the documents produced pursuant to this Court's order, a previously produced document Bates stamped 000268PASD, and transcripts of the depositions in which the documents were discussed. Defendant argued, inter alia, that plaintiff did not have the right to challenge documents already "deemed" confidential under the Stipulation, only those "designated" confidential in the future under the terms of the Stipulation, and that permitting challenges to those documents "deemed" confidential improperly overruled Justice Sklar's decision. Plaintiff, in response, disagreed with defendant's assertion that a confidentiality designation could only be challenged on those documents "designated" confidential in the future, or after the Stipulation was executed, and pointed out that defendant had already disclosed "sensitive security information" to the public when it allowed the WTC security chief to reveal details of the security technology "currently" in use at the WTC to a magazine writer.

Special Referee Doyle, by decision and order entered on or about April 13, 2001, granted the PA's motion and found "that the already produced security documents, including the documents Bates stamped 268PASD, shall retain their designation of confidential based upon the doctrine of law of the case." The Special Referee noted that the documents had been ordered produced pursuant to the earlier confidentiality order, and then actually produced pursuant to the "so ordered" Stipulation, and that they therefore retained the confidentiality designation.

The parties to an action are entitled to the "full disclosure of all matter material and necessary in the prosecution or defense of an action * * *" (CPLR 3101 [a]). In *Cynthia B. v New Rochelle Hosp. Med. Ctr.* (60 NY2d 452, 461), the Court of Appeals opined that "[t]he discovery provisions of the CPLR have

traditionally been liberally construed to require disclosure 'of any facts bearing on the controversy which will assist [the parties'] preparation for trial' (*see, Allen v Crowell-Collier Pub. Co.*, 21 NY2d 403, 406). 'The test is one of usefulness and reason.' "

■ In this matter, we find that Special Referee Doyle did not abuse his discretion in finding that defendant was not entitled to depose plaintiff a second time. We note that the first deposition was conducted over a two-day span and took a total of 10 hours, generating more than 300 pages of transcript testimony. Plaintiff avers that the initial day of questioning had to be abbreviated due to her inability to concentrate for any length of time, coupled with her chronic fatigue. A review of the transcript of the first deposition reveals that plaintiff was questioned, quite thoroughly, regarding her prior experiences when parking in the garage, whether she had ever forwarded any complaints about the parking facilities, and whether she had noticed if it was an attended lot. Indeed, in the case of an indiscriminate, homicidal bombing, it is difficult to envision what plaintiff might contribute with regard to the issue of liability, other than the subjects she had already been questioned about, i.e., did she notice if the lot was attended. We find, therefore, that plaintiff's late designation of herself as a liability witness, without more, is insufficient to support an order directing her further deposition.

■ Special Referee Doyle also properly concluded that the confidentiality designation of the documents plaintiff sought to challenge was beyond his power of review. The Stipulation, so ordered by Justice Sklar, makes it very clear that there are two classes of documents, those that have been produced and are deemed confidential, and those that are to be produced and may be deemed confidential "in accordance with the procedures set forth" in the Stipulation. It is with respect to the latter class of documents that the Special Referee was empowered to make a ruling, if challenged, regarding whether the documents should retain a confidential classification. Since the documents challenged by plaintiff fall into the former class, which had already been deemed confidential by the Stipulation, the Special Referee properly declined to review Justice Sklar's designations.

We also find plaintiff's reliance on *Danco Labs. v Chemical Works of Gedeon Richter* (274 AD2d 1) to be misplaced. In *Danco*, the dispute involved access to "court records," i.e., documents that had been filed in connection with preliminary mo-

tions pursuant to 22 NYCRR 216.1. This rule sets forth the standard for sealing "court records," but 22 NYCRR 216.1 (b) specifically carves out an exception for documents obtained in discovery, providing that they remain subject to protective orders as set forth in CPLR 3103 (a). Plaintiff, in any event, was a signatory to the Stipulation "so ordered" by Justice Sklar.

Finally, in light of the tragic destruction of the WTC on September 11, 2001, it is impossible to determine if at least part of the issues raised herein are moot, as defendant asserts that the subject security documents cover PA facilities other than "ground zero." Since the documents are not included in the record and are not, therefore, before us, we decline to rule on the mootness issue. In any event, that subject is best addressed by the Supreme Court.

Accordingly, the order of the Supreme Court, New York County (Nicholas Doyle, Special Referee), entered January 4, 2001, which, inter alia, denied defendant's cross motion to compel plaintiff to appear for a second deposition, and the order, same court and Special Referee, entered on or about April 13, 2001, which granted defendant's motion to retain the confidential designation on certain security documents produced pursuant to court order, should be affirmed, without costs.

Sullivan, Wallach and Rubin, JJ., concur.

Order, Supreme Court, New York County, entered January 4, 2001, and order, same court, entered on or about April 13, 2001, affirmed, without costs.