OPINION OF THE COURT
Marilyn Shafer, J.
Plaintiffs motion for a protective order is granted in *367 part, and defendant’s cross motion to compel is granted in part.
Background
Plaintiff Hispanic AIDS Forum (HAF) is a nonprofit organization whose treatment and education services seek to reduce HIV transmission and secure necessary support services for Latinos in New York City who are affected by HIV/AIDS. HAF operates three community-based offices in the city’s largest Latino neighborhoods, including Lower Manhattan, Western Queens and the South Bronx. In March 1991, HAF entered into a two-year lease (the lease) with the defendants for office space in the Bruson Building (the building), located at 74-09 37th Avenue in Jackson Heights. The defendants own, operate and manage the building. The lease was subsequently renewed without dispute. By 1995, HAF needed more space and the parties entered into a lease on March 15, 1995 for suite 306 on the third floor of the building, and another lease on December 15, 1995 for suite 305. Both leases signed in 1995 expired April 30, 2000. In addition to HAF, there are two other social services agencies and several attorneys’ offices located on the third floor that all share the common areas which include the bathrooms located in the main hallway. Although the bathrooms were often unlocked, each commercial tenant had keys to the women’s and men’s bathrooms. In 1996 or 1997, Carboni Travel leased office space down the hall from HAF.
In late 1999, HAF alleges that one of its transgendered[1] clients informed HAF’s staff member Blanca Carranza that an employee for Carboni Travel had approached her in the bathroom and asked why she was using the women’s bathroom (complaint 15). Shortly after that incident, HAF alleges that one of the Carboni Travel’s two employees told Carranza that they did not like “those men that look like women using the bathroom” (complaint 16) to which Carranza explained why transgendered Latinas use the women’s bathroom (id.).
*368 Responding to the increasing need for HIV/AIDS services among transgendered Latinas, HAF initiated greater outreach and the number of transgendered clients being serviced at the Jackson Heights office increased. In 2000, a new support group for transgendered clients was formed at HAF and the bimonthly meetings were regularly attended by approximately five or six transgendered clients. In spring 2000, HAF and the defendants negotiated a new five-year lease for suite 306 and it was agreed that HAF would renovate suite 306. On March 31, 2000, the defendants sent HAF a renewal lease for suite 306 to commence on May 1, 2000. The lease was signed by HAF and mailed to the defendants on April 24, 2000. On or about May 5, 2000, HAF hand delivered to the defendants’ office manager a check for the first month’s rent, supplemental security deposit and the required insurance documents, which the manager accepted. HAF alleges that the manager mentioned that other tenants were complaining because “men who think they’re women are using the women’s bathroom” (complaint 20). Toward the end of May 2000, HAF alleges it was told by the defendants’ manager that they were not going to sign the renewal lease because the defendants received complaints from other tenants and had issues with “men who think they’re women using the women’s bathrooms” and “women who think they’re men using the men’s bathrooms” (complaint 21). HAF alleges that several conversations took place between its attorney and the defendants’ property manager during which time defendants allegedly made several offensive comments and ridiculed HAF’s clients. On June 30, 2000, HAF received an eviction notice demanding that suite 306 be vacated by July 31, 2000. Defendants then commenced an eviction proceeding in housing court. The parties entered into a stipulation where HAF agreed to vacate the premises by January 31, 2001, which it did. HAF then commenced this action against the defendants on the grounds of unlawful discrimination in refusing to rent to HAF because of its transgendered clients.
Instant Motion and Cross Motion
Plaintiff brings the instant motion seeking protective order relieving the plaintiff from responding to some of the discovery requests which the plaintiff alleges are irrelevant, improper, or protected by privilege and privacy interests. Specifically, plaintiff objects to items I (a) (2) (b); II (a) (3) (b); and III (b) in defendants’ demand for a verified bill of particulars (demand), and *369 item V in defendants’ notice to produce defendants. Defendants contend that their requests are proper and necessary, and cross-move to compel plaintiff to provide the requested disclosure. In their demands, defendants seek, inter alia, the following information about each individual who was the victim of the claimed discrimination: “a) name; ii) address; iii) age; iv) anatomical sex at birth; v) anatomical sex at time of each alleged incident; vi) sexual identity at time of each alleged incident; and vii) specific physical description at time of each alleged incident.”
Discussion
Confronting the policy of liberal discovery pursuant to CPLR 3101 is the competing policy of preventing a particular type of disclosure through the vehicle of CPLR 3103 (Cynthia B. v New Rochelle Hosp. Med. Ctr., 60 NY2d 452, 457 [1983]). A protective order is designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice to any person of the courts (id.). In exercising its discretion whether and to what degree a protective order under CPLR 3103 should issue, a court must strike a balance by weighing these conflicting interests in light of the facts of the case (id.). In this action where there are legitimate privacy and statutory issues, the need for disclosure must be reconciled with the need for protection.
In an effort to limit the risk of discrimination endured by individuals living with HIV and AIDS, the Legislature enacted section 2780 of the Public Health Law to provide additional protection of the confidentiality of HIV related information. By providing such protection, “the legislature intends to encourage the expansion of voluntary confidential testing for the human immunodeficiency virus (HIV) so that individuals may come forward, learn their health status, [and] make decisions regarding the appropriate treatment * * *” (L 1988, ch 584, §1 [eff Feb. 1, 1989]).
This court finds that HAF is barred by Public Health Law § 2782 from revealing the identity of its clients. Public Health Law § 2782 mandates that “No person who obtains confidential HIV related information in the course of providing any health or social service or pursuant to a release of confidential HIV related information may disclose or be compelled to disclose such *370 information, except to the following: * * *”[2] (Public Health Law § 2782 [1]). Defendants contend that the Public Health Law does not apply because they are not seeking confidential AIDS related information whatsoever but simply trying to gather material and necessary facts as to the transgendered clients who were allegedly the victims of discrimination. Further, defendants argue, albeit without legal support, HAF’s use of the Public Health Law as a shield from disclosure “is not consistent with case law” (affidavit in opposition ^ 10). Defendants’ arguments are unconvincing. By the very nature of the Hispanic AIDS Forum’s specific work with individuals affected by HIWAIDS, revealing the names of HAF’s clients is to reveal “confidential HIV related information” about those individuals. “ ‘Confidential HIV related information’ means any information, in the possession of a person who provides one or more health or social services * * * concerning whether an individual has been the subject of an HIV related test, or has an HIV infection, HIV related illness or AIDS, or information which identifies or reasonably could identify an individual as having one or more such conditions * * * ” (Public Health Law § 2780 [7]). Defendants further contend that despite these provisions, a court can still authorize disclosure. While Public Health Law § 2785 (2) does provide that a court may grant an order for disclosure of confidential HIV related information upon an application showing a compelling need or a clear and imminent danger, and after notice and an opportunity to provide a written response is given to the individual concerning whom the information is sought (Public Health Law § 2785 [4] [a]; [5]), defendants utterly fail to meet the requisite showing.
Defendants’ objection that HAF has waived the medical rights of its clients by bringing this lawsuit is also without merit. While HAF may waive its own rights, there is no basis in law or under the factual circumstance in this action to permit the plaintiff’s waiver of the privacy rights of the nonparty clients. Accordingly, the requested disclosure for the names, addresses, and photographs of HAF’s clients is deemed impermissible.
This court further finds that defendants have failed to articulate the relevance of their inquiries regarding the anatomical sex, at birth or otherwise, of HAF’s clients to the comments and claims of discrimination allegedly made in this action. As *371 previously set forth by the plaintiff, without objection by the defendants, since the status of a transgendered individual is not dependent upon their physical anatomy (see n 1), information about the anatomical sex of HAF’s clients, and whether and when such clients underwent physical procedures, is immaterial. Plaintiff has already agreed to stipulate to the fact that (1) they have transgendered clients, and (2) their transgendered clients used the “wrong restrooms” (complaint 23). However, to the extent that the outward physical appearance of HAF’s clients is relevant in light of HAF’s allegations that the building’s other tenants complained “men who think they’re women are using the women’s bathroom,” this court will permit the request for specific physical description of their clients at the time of each alleged incident, and the request for their age.
Lastly, to the extent that HAF has already revealed and identified the status of its clients as transgendered individuals (reply mem at 5 n 2), the portion of the plaintiffs motion seeking a release from responding to the request for the sexual identity of HAF’s clients is deemed withdrawn.
Conclusion
Accordingly, the plaintiffs motion for a protective order is granted regarding demand items I (a) (2) (b) (a, ii, iv, v); II (a) (3) (b) (i, ii, iv, v); and III (b) (i, ii, iv, v); and notice item V regarding photographs; and defendants’ motion to compel is granted to the extent that the plaintiff is directed to serve a response to demand items I (a) (2) (b) (iii, vi, vii); II (a) (3) (b) (iii, vi, vii); and III (b) (iii, vi, vii) but limited only to 1999-2001. The remaining portion of notice item V, to the extent that it is not duplicative of other permitted disclosure, is also limited to 1999-2001.

. “Transgendered people are those who have a strong and persistent cross-gender identification and experience persistent discomfort about their assigned sex” (HAF reply mem of law at 3 n 2, citing Diagnostic and Statistical Manual of Mental Disorders, at 532-533 [4th ed]). “Transgendered individuals include people who present as the other sex but take no hormones and have no surgery, people who take hormones to change their secondary sex characteristics but have no surgery, and people who have a range of surgical procedures to alter their anatomical sex. Only a small percentage of transgendered people have surgery, and still a smaller percentage have all the surgery required to change all aspects of the anatomical sex” (id.).

. None of the exceptions that follow provide a category for landlords who are the subject of a discrimination lawsuit.